UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

CRYSTAL R. MARVIN,                    )
                                     )
                Plaintiff,            )
                                     )
v.                                   )        Case No. 1:17-cv-330
                                     )
COMMISSIONER OF                      )        Honorable Robert J. Jonker
SOCIAL SECURITY,                     )
                                     )
                Defendant.           )
—————————————————————————)

## **REPORT AND RECOMMENDATION**

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3),

seeking review of a final decision of the Commissioner of Social Security finding that

plaintiff was not entitled to disability insurance benefits (DIB) and supplemental

security income (SSI) benefits.    On September 19, 2013, plaintiff filed her

applications for DIB and SSI benefits.    Plaintiff alleged a May 4, 2010, onset of

disability. (ECF No. 7-5, PageID.254-67; ECF No. 7-6, PageID.409).  Plaintiff's claims

were denied on initial review.    (ECF No. 7-4, PageID.188-91, 194-97).    On

December 11, 2015, she received a hearing before an ALJ.  (ECF No. 7-2, PageID.108-

48).  On February 4, 2016, the ALJ issued her decision finding that plaintiff was not

disabled.[1]  (Op., ECF No. 7-2, PageID.90-101).  On February 6, 2017, the Appeals

Council denied review (ECF No. 7-2, PageID.39-42), and the ALJ's decision became

---

[1] All citations to regulations herein are to the versions in effect on the date of the
ALJ's decision.

the Commissioner's final decision.

Plaintiff timely filed a complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

I.      The ALJ committed error failing to call on a medical expert in determining whether plaintiff met or medically equaled listing 1.02.

II.     The ALJ committed error in assessing plaintiff's RFC.

III.    The ALJ committed error in the weight she gave to the opinions of a treating physician.

IV.     The ALJ committed error in evaluating plaintiff's subjective symptoms.

(Plf. Brief at 7, ECF No. 14, PageID.897).  For the reasons stated herein, I recommend that the Court affirm the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The scope of the court's review is limited. *Buxton*, 246 F.3d at 772.  The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012).  "The findings of the Commissioner

of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  42 U.S.C. § 405(g).  "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  . . .  This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference."  *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently."  *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion.").  "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## **The ALJ's Decision**

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act through December 31, 2015.  (Op. at 3, ECF No. 7-2, PageID.92).  Plaintiff had not engaged in substantial gainful activity on or after May 4, 2010, the

alleged onset date.[2]  (*Id.*).  Plaintiff had the following severe impairments: "recurrent bilateral trochanteric bursitis, obesity, status post lumbosacral decompression and fusion, migraine headaches, degenerative joint disease of the bilateral knees, anterolisthesis of L5 on S1, depression, and anxiety." (*Id.*).  Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listing impairment.  (*Id.* at 4, PageID.93).  The ALJ found that plaintiff retained the residual functional capacity (RFC) for a range of sedentary work with the following exceptions:

> She can stand and/or walk for 20 minutes at a time up to two hours in an eight-hour workday and sit for 30 minutes at a time up to six hours in an eight-hour workday.  When alternating positions the claimant can remain on task and at the workstation.  She can never climb ladders, ropes, or scaffolds, and can only occasionally climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch, and crawl.  She can occasionally perform decision-making, but is limited to simple tasks, defined as those that can be learned in 30 days.

(Op. at 7, ECF No. 7-2, PageID.96).

The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible.  (*Id.* at 7-9, PageID.96-98).  Plaintiff could not perform any past relevant work.  (*Id.* at 10, PageID.99).

---

[2] Plaintiff testified that she was convicted of felony embezzlement during the period she claims to have been disabled.  (ECF No. 7-2, PageID.130-36).  Munson Healthcare Behavioral Services records indicate that plaintiff was admitted to a compulsive gambling treatment program on May 4, 2010, and that she was discharged on November 10, 2010.  The same records state that plaintiff "received and completed a jail term while in treatment."  (ECF No. 7-9, PageID.851).  Plaintiff is not eligible to receive benefits for any months she was confined in a jail or prison.  *See* 42 U.S.C. §§ 402(x)(1)(A), 1382(e)(1)(A); 20 C.F.R. §§ 404.468, 416.1325.

The ALJ considered the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age with her RFC, education, and work experience, the VE testified that there were approximately 167,000 jobs in the national economy that the hypothetical person would be capable of performing. (ECF No. 7-2, PageID.142-45).  The ALJ found that this constituted a significant number of jobs and found that plaintiff was not disabled.  (Op. at 11-12, ECF No. 7-2, PageID.100-01).

## Discussion

### 1.

Plaintiff argues that ALJ erred in not seeking the opinion of a medical advisor as to whether plaintiff's impairments equaled listing 1.02.  (Plf. Brief at 8-11, ECF No. 14, PageID.898-901; Reply Brief at 1-2, ECF No. 18, PageID.936-37).

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations omitted).  "Because satisfying the listings yields an automatic determination of disability ... the evidentiary standards [at step three] ... are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Commissioner*, 552 F. App'x 533, 539 (6th Cir. 2014).  A claimant bears the burden of demonstrating that she meets or equals a listed impairment at the third step of the sequential evaluation.  *Elam*, 348 F.3d at 125.  An impairment that only meets some of the criteria does not satisfy plaintiff's

burden. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

It is possible for a claimant to provide evidence of a medical equivalent to a listing. *See Bolton v. Commissioner*, No. 17-6129, __ F. App'x __, 2018 WL 1773504, at *1 (6th Cir. Apr. 12, 2018); *see also* 20 C.F.R. §§ 404.1526, 416.926. To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. at 531; *Thacker v. Social Security Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("When a claimant alleges that [s]he meets or equals a listed impairment, [s]he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency.") (citing *Evans v. Secretary of Health & Human Servs.*, 835 F.2d 161, 164 (6th Cir. 1987)).

This Court has consistently rejected the argument that an ALJ is required to obtain an expert medical opinion on the question of equivalence.[3] *See Harvey v. Commissioner*, No. 1:17-cv-227, 2018 WL 1477579, at *5 (W.D. Mich. Mar. 27, 2018); *Bledsoe v. Commissioner*, No. 1:16-cv-816, 2017 WL 3392763, at *6 (W.D. Mich. Aug. 8, 2017); *see also Forrest v. Commissioner*, No. 1:16-cv-633, 2017 WL 1905867,

---

[3] SSR 17-2p does not apply to this case because the ruling went into effect more than a year after the ALJ entered her decision. It is appropriate to note, however, that the Social Security Administration has clarified that an ALJ is not required to obtain a medical expert's opinion before making a finding that an individual's impairments do not meet or equal a listing impairment. *See Titles II and XVI: Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process to Make Findings about Medical Equivalence*, SSR 17-2p (reprinted at 2017 WL 3928306, at *3-4 (SSA Mar. 27, 2017)).

at *7 (W.D. Mich. May 10, 2017) ("[T]he regulations at 20 C.F.R. § 404.1527(e) plainly do not require that an ALJ consult with a medical expert before making his finding that a claimant did not meet or equal the requirements of a listed impairment."). "The ALJ did not err [] in making [her] determination at step 3 without consulting a medical expert" because "the burden at step 3 rests squarely on the [p]laintiff's shoulders." *Wagner v. Commissioner*, No. 1:15-cv-558, 2016 WL 2585797, at *5 (W.D. Mich. May 5, 2016).

Plaintiff made no attempt to satisfy her burden of establishing that she met or equaled all the requirements of listing 1.02. Plaintiff's representative "did not argue that [plaintiff's] impairments met or equaled a listing." (Op. at 4, ECF No. 7-2, PageID.93). Prehearing correspondence from the Social Security Administration emphasized that the administrative hearing was plaintiff's "time to explain why [she] believe[d] the ALJ should decide the issues in [her] favor." (ECF No. 7-4, PageID.215, 217). Plaintiff's prehearing brief is devoid of argument that plaintiff met or equaled the requirements of any listed impairment. (ECF No. 7-6, PageID.409). Plaintiff offered no argument at the hearing that she met or equaled the requirements of a listed impairment. (ECF No. 7-2, PageID.108-48).

The ALJ determined that plaintiff did not meet or equal the requirements of any listed impairment, including listing 1.02.[4] (Op. at 4-5, ECF No. 7-2, PageID.93-

---

[4] Plaintiff states in her reply brief that her initial brief "pointed [out] not only elements of Listing 1.02 but overlapping elements of 1.04 as well." (Reply Brief at 2, ECF No. 18, PageID.937). Listing 1.04 is not mentioned in plaintiff's initial brief. Plaintiff has waived any argument regarding listing 1.04 on multiple levels. The issue is waived because it does not appear in plaintiff's statement of errors. *See Ealy*

96).  Listing 1.02 requires:

> Major dysfunction of a joint(s) (due to any cause):  Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).  With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Part 404, Subpart P, App. 1 § 1.02A.  Section 1.00B(2)(b) defines "inability to ambulate effectively" as "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" and "having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  20 C.F.R. Part 404, Subpart P, App. 1 § 1.00B(2)(b)(1).

Plaintiff now claims that her knee impairments constitute a major joint dysfunction.  (Plf. Brief at 10, ECF No. 14, PageID.900).  She provides no developed argument how her knee impairments constitute a "gross anatomical deformity."  She does not address how the evidence satisfies the above-referenced definition of "inability to ambulate effectively."  Stating that plaintiff had a prescription for a knee

---

*v. Commissioner*, 594 F.3d 504, 513 (6th Cir. 2010); *Toll v. Commissioner*, No. 1:16-cv-705, 2017 WL 1017821, at *3 (W.D. Mich. Mar. 16, 2017).  Further, the issue is waived because a reply brief is not the proper place to raise new arguments.  *See Bormuth v. Cty. of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) (*en banc*) (" 'We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.' ") (quoting *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)).

brace and citing a few instances where she had a "slightly antalgic" gait does not approach satisfying plaintiff's burden.  The ALJ's finding that plaintiff "routinely displayed a normal gait" is supported by substantial evidence.  (Op. at 8, ECF No. 7-2, PageID.97; *see* ECF No. 7-7, PageID.483, 503, 505, 529, 565, 580; ECF No. 7-8, PageID.636, 645, 661, 686, 719, 723).  I find no basis for disturbing the Commissioner's decision.

## 2.

Plaintiff argues that the ALJ committed error in the weight she gave to the opinions of Flora Biancalana, M.D., a treating physician.  (Plf. Brief at 14-16, ECF No. 14, PageID.904-06; Reply Brief at 4, ECF No. 18, PageID.939).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference.  *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011).  "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician.  Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent ... with the other substantial evidence in the case record.' " *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)).  A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th

Cir. 2013).

"[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773 (citation and quotation omitted).  An opinion that is based solely on the claimant's reporting of her symptoms is not entitled to controlling weight.  *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990*); see also Kepke v. Commissioner*, 636 F. App'x 625, 629 (6th Cir. 2016) ("[A] a doctor cannot simply report what his patient says and re-package it as an opinion."); *Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors.  *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Perry v. Commissioner*, No. 17-4182, __ F. App'x __, 2018 WL 2470915, at *3 (6th Cir. June 4, 2018) ("This does not require an 'exhaustive, step-by-step analysis[.]' ") (quoting *Biestek v. Commissioner*, 880 F.3d 778, 785 (6th Cir. 2017)).

Moreover, the Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their

substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007*); see Gayheart*, 710 F.3d at 376. The reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight."[5] SSR 96-2p, 1996 WL 374188 at *5; *see Gayheart*, 710 F.3d at 376. This procedural requirement exists, in part, so that claimants "understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see also Gayheart*, 710 F.3d at 376 ("This procedural requirement ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.") (citation and quotation omitted).

Dr. Biancalana is plaintiff's primary care provider. (ECF No. 7-6, PageID.409). On November 27, 2015, she completed a physical residual functional capacity questionnaire. (ECF No. 7-8, PageID.694-97). Plaintiff's prehearing brief conceded that the Dr. Biancalana's questionnaire responses were "internally inconsistent." (ECF No. 7-6, PageID.409). The ALJ agreed, citing plaintiff's prehearing brief. (Op. at 9, ECF No. No. 7-2, PageID.98).

On December 7, 2015, Dr. Biancalana revised her physical RFC questionnaire responses. (ECF No. 7-9, PageID.855-58). Although the ALJ gave the opinions

---

[5] SSR 96-2p applies to plaintiff's claims for DIB and SSI benefits. *See Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p* (reprinted at 2017 WL 3928298, at *1 (SSA Mar. 27, 2017) ("This rescission will be effective for claims filed on or after March 27, 2017.").

partial weight (Op. at 9, ECF No. 7-2, PageID.98), she could have given them less weight without committing error because the suggested RFC restrictions were not accompanied by explanations citing supporting objective medical evidence.  *See Ellars v. Commissioner*, 647 F. App'x 563, 566-68 (6th Cir. 2016); *see also Hernandez v. Commissioner*, 644 F. App'x 468, 467 (6th Cir. 2016) ("We have [] declined to give significant weight to rudimentary indications that lack an accompanying explanation.").  Further, Dr. Biancalana stated at the end of the questionnaire that she made changes to her responses after plaintiff and her representative "reviewed [the earlier questionnaire responses] and realized that there were inconsistencies." (*Id.* at PageID.858).  The ALJ noted that the "changes made to her opinion [] occurred only after Dr. Biancalana received information from the claimant and her representative, bringing into question the objectiveness of these changes." (Op. at 9-10, ECF No. 7-2, PageID.98-99).  The ALJ found that the objective evidence, including Dr. Biancalana's treatment notes, did not support the suggested RFC restrictions. (*Id.* at 10, PageID.99).

The ALJ recognized that Dr. Biancalana was a treating physician and that she had regular and personal contact with plaintiff on which to base her opinions.  (*Id.* at 9, PageID.98).  The ALJ considered Dr. Biancalana's questionnaire responses as her opinions regarding plaintiff's RFC on the date she signed those responses.  The ALJ stated:  "[T]hese opinions were given over five years after the alleged onset date, and at most, would only reflect more recent deterioration in functioning." (*Id.*).  The questionnaires supplied by plaintiff's representative did not provide a space for a

describing how far, if at all, the suggested RFC restrictions extended into the past. (ECF No. 7-8, PageID.694-97; ECF No. 7-9, PageID.855-58). Dr. Biancalana's use of the word "chronic" did not extend the periods covered by her responses. The ALJ did not commit error in treating the questionnaire responses as then-current evaluations rather than extending back to plaintiff's alleged onset of disability.

Dr. Biancalana's diagnosis was that plaintiff had a history of a L4-L5 and L5-S1 laminectomy,[6] hip pain, and knee pain.[7]  (ECF No. 7-9 at PageID.855).  Her opinion that plaintiff was "incapable of working" was entitled to no weight because disability is an issue reserved to the Commissioner. *See Cosma v, Commissioner*, 652 F. App'x 310, 311 (6th Cir. 2016) (*per curiam*); *see also Selim v. Commissioner*, No. 1:13-cv-928, 2014 4080305, at *8 (W.D. Mich. Aug. 18, 2014); 20 C.F.R. §§ 404.1527(d), 416.927(d).  Her statement of "how often plaintiff would likely miss work was conjecture, not a medical opinion." *Ellis v. Commissioner*, No. 1:15-cv-726, 2016 WL 3735776, at *4 (W.D. Mich. July 13, 2016).

The ALJ found that plaintiff was restricted to sedentary work and incorporated Dr. Biancalana's suggested limitations that plaintiff could only stand and/or walk for 20 minutes at a time and sit for 30 minutes at a time.  The ALJ rejected other suggested restrictions such as limiting plaintiff to sitting for about two hours and

---

[6] Plaintiff "underwent L4-S1decompression surgery in February of 2008." (Op. at 8, ECF No. 7-2, PageID.97; *see* ECF No. 7-7, PageID.415, 444, 473-75).

[7] If the ALJ's opinion had fallen short of providing good reasons, the error would be harmless because Dr. Biancalana's questionnaire responses lack "explanation[s] of how Plaintiff's diagnoses impose these severe restrictions on h[er] ability to perform work." *Toll v. Commissioner*, No. 1:16-cv-705, 2017 WL 1017821239, at *4 (W.D. Mich. Mar. 16, 2017).

standing and walking for less than two hours in an eight-hour workday.  The ALJ found that the objective evidence and Dr. Biancalana's own treatment notes indicated that plaintiff was "not as limited as opined by the doctor."  (Op. at 10, ECF No. 7-2, PageID.99).  The ALJ then cited as supporting evidence the numerous medical records indicating that plaintiff had normal neurological function, motor function, sensation, range of motion, strength, and gait.  (*Id.*).

Plaintiff claimed a May 4, 2010, onset of disability.  In 2010, Dr. Biancalana generally found that plaintiff's posture and gait were within normal limits.  (ECF No. 7-7, PageID.499, 501, 503, 505).  On July 28 and October 6, 2010, plaintiff had a "slightly antalgic gait when initially walking." (*Id.* at PageID.507, 509).  The MRI of plaintiff's lumbar spine showed some postoperative changes without significant evidence of recurrent stenosis or disc herniation.   (*Id.* at PageID.513-14).   On September 17, 2010, Paul Davis, M.D., found no evidence of instrument failure or disunion.  Plaintiff denied strength loss or referred pain below knee level.  Dr. Davis indicated that plaintiff's hip could be the source of the pain she reported.  (*Id.* at PageID.473).

On March 9, 2011, plaintiff stated that she was "in a hit and run crash," but she did not go to the emergency room.  Her cigarette smoking had increased.  She had gained weight and was taking more medication.  Her gait and posture were within normal limits.  (*Id.* at PageID.511).  On April 6, 2011, Richard Ball, M.D., noted that plaintiff's back condition had improved after the 2008 surgery.  He suspected the low back pain that plaintiff reported was caused by trochanteric bursitis.  Plaintiff's

-14-

strength was within normal limits and her knee and hip joint examinations were essentially benign. (*Id.* at PageID.524-25). On April 11, 2011, Dr. Ball treated plaintiff's lower back and trochanteric bursa with injections. (*Id.* at PageID.523).

On March 21, 2012, plaintiff related to Dr. Biancalana that she had a history of bilateral knee pain. Plaintiff reported that the "[p]ain usually comes and goes but her left knee had been worse in the last week." (ECF No. 7-7, PageID.565). Plaintiff denied any recent injury. Her gait was smooth and steady. She was not wearing a knee brace. Plaintiff was provided with an early refill of Percocet and advised to continue using rest and ice. (*Id.* at PageID.565-66). When plaintiff returned on July 2, 2012, her strength and reflexes were normal. (*Id.* at PageID.568-69). In August and November 2012, plaintiff's posture and gait were normal. (*Id.* at PageID.570, 572).

On February 8, 2013, plaintiff's posture was normal, but she had some antalgia when beginning to ambulate. (*Id.* at PageID.576). In March 2013, plaintiff had appendectomy surgery. (*Id.* at PageID.536-54). She received bilateral hip injections in March and May 2013. She did not have sensory deficits and retained a good range of motion in both hips. She had a mild restriction in her lumbosacral range of motion and her gait was non-antalgic. (*Id.* at PageID.527-29). In May and June 2013, plaintiff's posture and gait were within normal limits. (*Id.* at PageID.578-81). On August 2, 2013, her strength and reflexes were normal. (*Id.* at PageID.582-83). On September 20, 2013, plaintiff advised Dr. Biancalana that she had experienced left knee pain for about a week. On examination Dr. Biancalana found

that plaintiff was not in any acute distress.  Her posture and gait were normal.  Her strength was good.  (*Id.* at PageID.585-86).  On October 16, 2013, the MRI of plaintiff's left knee did not show a definite meniscal tear.  It did indicate mild to moderate tricompartmental degenerative changes with joint space narrowing and osteophyte formation.  (ECF No. 7-8, PageID.597-98).  On October 25, 2013, plaintiff advised Michael Peters, D.O., that she had been experiencing left knee pain for about one month.  Dr. Peters interpreted plaintiff's left knee x-ray as showing mild medial compartment arthritis and mild patella-femoral arthrosis.  Plaintiff was counseled regarding weight loss and smoking cessation.  Dr. Peters found that there was no need for arthroscopic surgery.  (*Id.* at PageID.640-41, 650-53).  On November 4, 2013, Dr. Peters treated plaintiff's left knee with a "Synvisc One" injection.  (*Id.* at PageID.638, 649).

On March 7, 2014, Armin Harandi, M.D., began treating plaintiff on a referral from Dr. Biancalana.  (ECF No. 7-8, PageID.636-37).  Plaintiff had a small right wrist cyst.  X-rays showed no fracture, dislocation or other bony abnormality.  Dr. Harandi explained plaintiff's treatment options.  The cyst was small and did not hurt.  Dr. Harandi advised plaintiff to return if the cyst became painful or its size increased.  (*Id.* at PageID.689-92).  Plaintiff returned to Dr. Harandi on May 23, 2014, for treatment of her knees.  Plaintiff was not in any acute distress.  Her gait, stance, and strength were normal.  Dr. Harandi interpreted plaintiff's x-rays as showing osteoarthritis.  He administered corticosteroid injections on May 23 and August 25, 2014.  (*Id.* at PageID.681-88).  On September 15, 2014, plaintiff came to

Dr. Harandi on self-referral for her hip pain.  Hip x-rays showed no fracture, dislocation, or degenerative changes.  Dr. Harandi recommended physical therapy. (*Id.* at PageID.677-78).   In November 2014, plaintiff sought emergency room treatment for right knee pain.  She received a brace and was advised to remain non-weight bearing for one or two weeks.  On November 21, 2014, plaintiff informed Dr. Harandi that her knee was less painful, but she wanted to discuss surgical intervention.  (*Id.* at PageID.669-73, 738-41).   On December 5, 2014, Dr. Harandi performed arthroscopic surgery on plaintiff's right knee.  (*Id* at PageID.667- 68).

On January 19, 2015, Physician's Assistant Shannon Gabel-Dorr observed that plaintiff's gait and stance were normal.  She noted that Dr. Harandi had not imposed any post-surgical orthopedic restrictions.  Plaintiff was feeling fine.  She was in no pain and was planning to ask Dr. Harandi about having arthroscopic surgery performed on her left knee.  (ECF No. 7-8, PageID.659-52).  On February 3, 2015, the physician's assistant sent a letter to Dr. Biancalana updating her on the results of this post-surgical visit.  (*Id.* at PageID.700-01).  On April 29, 2015, plaintiff returned to Dr. Biancalana with complaints of sinus issues stemming from a recent tooth extraction.  Dr. Biancalana diagnosed plaintiff as having acute maxillary sinusitis and prescribed medication, hot compresses, and thyme, sage or ginger tea.  (*Id.* at PageID.698).  There are no treatment records from Dr. Biancalana dated after April 29, 2015.  Dr. Biancalana completed RFC questionnaires for plaintiff's representative on November 27 and December 7, 2015.

The suggested RFC restrictions that the ALJ rejected were inconsistent with

Dr. Biancalana's own treatment notes and the other record evidence.  I find no violation of the treating physician rule.

### 3.

Plaintiff argues that the ALJ's factual finding regarding her RFC is not supported by substantial evidence.  (Plf. Brief at 11-14, ECF No. 14, PageID.901-04; Reply Brief at 2-4, ECF No. 18, PageID.937-39).

RFC is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mokbel-Aljahami v. Commissioner*, No. 17-2044, __ F. App'x __, 2018 WL 2017564, at *5 (6th Cir. Apr. 30, 2018).  While the RFC determination is made by the ALJ, an ALJ's RFC determination must be supported by substantial evidence.  *Torres v. Commissioner*, 490 F. App'x 748, 754 (6th Cir. 2012).

Plaintiff argues that the ALJ "failed to build an accurate and logical bridge" between the medical evidence and her factual finding that plaintiff retained the RFC for a limited range of sedentary work.  (Plf. Brief at 11, ECF No. 14, PageID.901).  I find that the ALJ provided an adequate explanation and that her findings regarding plaintiff's RFC are supported by substantial evidence.

Plaintiff argues that the ALJ's finding regarding her RFC should be rejected because she "played doctor."  (Plf. Brief at 12, ECF No. 14, PageID.902; Reply Brief at 2-3, ECF No. 18, PageID.937-38).  An argument that "the ALJ's RFC lacks substantial evidence because no physician opined that [plaintiff] was capable of [such] work" does not provide a basis for disturbing the Commissioner's decision.

*Shepard v. Commissioner*, 705 F. App'x 435, 442-43 (6th Cir. 2017); *see also Mokbel-Aljahmi*, 2018 WL 2017564, at *5 ("We have [] rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").  "The ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Commissioner*, 531 F. App'x. 719, 728 (6th Cir.  2013).  " '[T]o require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability.' " *Shepard*, 705 F. App'x at 442-43 (quoting *Rudd*, 531 F. App'x at 728).  The ALJ did not improperly substitute her "own medical judgment" for that of any medical expert or interpret raw medical data beyond her ability by making a RFC determination. *See  Rudd*, 531 F. App'x. at 726-27.

Plaintiff argues that the ALJ's RFC finding failed to adequately take her migraine headaches into account.  (Plf. Brief at 13-14, ECF No. 14, PageID.903-04; Reply Brief at 3-4, ECF No. 18, PageID.938-39).  The ALJ found that plaintiff's statements concerning the limiting effects of her headaches were not fully credible. Among other things, the ALJ noted that plaintiff reported that medication helped with her pain and/or headaches.  (Op. at 9, ECF No. 7-2, PageID.98) (citing Exhibits 5F/10, 18; 9F/5, 8, 10 found at ECF No. 7-7, PageID.501, 509, 567, 570, 572).  Plaintiff "also often denied headaches."  (*Id.*) (citing Exhibits 13F/1; 16F/12, 32 found at ECF No. 7-8, PageID.645, 670, 690).  Plaintiff's emphasis on instances where she requested

more or different headache medication (Plf. Brief at 13, ECF No. 14, PageID.903) does not undermine the substantial evidence supporting the ALJ's findings regarding her RFC.

It was appropriate for the Commissioner to note that Dr. Biancalana "did not even mention headaches or identify any specific associated limitations in her opinion." (Def. Brief at 9, ECF No. 17, PageID.924). Plaintiff's reply that "not one doctor has offered limitations regarding the [headache] impairment" and "one might be tempted to conclude that the ALJ's RFC in this regard is based on the ALJ's own lay opinion" (Reply Brief at 3, ECF No. 18, PageID.938) is meritless. S*ee Mokbel-Aljahmi*, 2018 WL 2017564, at *5. Plaintiff's reply only serves to highlight the absence of medical evidence supporting the purported functional limitations stemming from her headaches. Plaintiff bears the ultimate burden of producing sufficient evidence to show that she is disabled. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Montecalvo v. Commissioner*, 695 F. App'x. 124, 127 (6th Cir. 2017) (The plaintiff's burden "includes supplying medical evidence that substantiates the claim of disability.").

## 4.

Plaintiff invokes SSR 16-3p and argues that the ALJ's evaluation of her symptoms is not supported by substantial evidence. (Plf. Brief at 16-20, ECF No. 14, PageID.906-10; Reply Brief at 4-5, ECF No. 18, PageID.939-40).

Plaintiff's reliance on SSR 16-3p is misplaced. The ALJ entered her decision on February 4, 2016. SSR 16-3p only applies to administrative decisions made on or

after March 28, 2016.  *See Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims* (reprinted at 2017 WL 5180304, at *1, 13 n.27 (SSA Oct. 25, 2017)).  SSR 16-3p does not apply retroactively.  *See Andres v. Commissioner*, No. 17-4070, __ F. App'x __, 2018 WL 2017281, at *5 n.5 (6th Cir. Apr. 30, 2018).

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.  *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  The Court does not make its own credibility determinations.  *See Walters v. Commissioner*, 127 F.3d at 528.  The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed[.]"  *Kuhn v. Commissioner*, 124 F. App'x 943, 945 (6th Cir. 2005).  The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the "substantial evidence" standard.  This is a "highly deferential standard of review."  *Ulman v. Commissioner*, 693 F.3d 709, 714 (6th Cir. 2012).  "Claimants challenging the ALJ's credibility determination face an uphill battle."  *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005); *see Ritchie v. Commissioner*, 540 F. App'x 508, 511 (6th Cir. 2013) ("We have held that an administrative law judge's credibility findings are 'virtually unchallengeable.' ").  "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."  *Jones*, 336 F.3d at 476.  "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to

observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d at 773.

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007). The *Rogers* court observed that the ALJ must explain her credibility determination and that the explanation " 'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.' " *Rogers v. Commissioner*, 486 F.3d at 248 (quoting *Policy Interpretation Ruling Titles II and XVI:  Evaluation of Symptoms in Assessing Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p* (reprinted at 1996 WL 374186, at *4 (SSA July 2, 1996)).

The ALJ gave a lengthy and detailed explanation of her factual findings regarding plaintiff's credibility and her findings are supported by substantial evidence.  (Op. at 7-9, ECF No. 7-2, PageID.96-98).

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: August 10, 2018                    /s/  Phillip J. Green
                                          PHILLIP J. GREEN
                                          United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).